Josiah Contarino (NJ Bar No. 003962013)
**DHILLON LAW GROUP INC.**
50 Park Place, Suite 1105
Newark, NJ 07102
(917) 423-7221
jcontarino@dhillonlaw.com

*Attorneys for Plaintiff*
*Republican National Committee*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE,<br><br>                    Plaintiff,<br><br>               v.<br><br>TAHESHA WAY, in her official capacity as Secretary of State of New Jersey.<br><br>                    Defendant. | No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff Republican National Committee ("RNC"), by and through its attorneys, brings this action for violations of Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507.

1. The RNC seeks injunctive relief to compel Defendant Secretary of State Tahesha Way's ("Defendant") compliance with Section 8 of the NVRA. Specifically, the RNC seeks an order commanding Defendant to permit the inspection and copying of records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of New Jersey's official lists of eligible voters, pursuant to 52 U.S.C. § 20507(i).

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the action arises under the laws of the United States. This Court also has jurisdiction under 52 U.S.C. § 20510(b), as the RNC seeks injunctive relief under the NVRA.

3. Venue in this Court is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

4. The RNC is the national organization of the Republican Party, as defined in 52 U.S.C. § 30101(14), with its principal place of business at 310 First Street SE, Washington, DC 20003. In addition to managing the Republican Party's business at the national level, the RNC supports Republican candidates for public office at all levels, including in New Jersey, coordinates fundraising and election strategy, and develops and promotes the national Republican Platform. The RNC purchases New Jersey's voter registration rolls on an ongoing schedule and relies upon those rolls to identify eligible voters, including those who are not yet registered; communicate with voters; and encourage voters to turn out and vote. The RNC regularly analyzes state voter roll maintenance practices to determine if voter rolls are accurate, educate voters, assist affiliated committees, and ensure compliance with federal law. The RNC represents over thirty-five million registered Republicans in all fifty states, the District of Columbia, and the U.S. territories. It comprises 168 voting members representing state and territorial Republican Party organizations

5. Defendant, in her official capacity as Secretary of State of New Jersey, oversees New Jersey's Division of Elections (the "Division"), including the Division's voter list maintenance activities conducted pursuant to the NVRA.

6. Federal law requires Defendant, as New Jersey's Chief Election Official, N.J. Admin. Code § 15:10-1.2, to coordinate New Jersey's responsibilities under the NVRA, including New Jersey's list maintenance obligations under 52 U.S.C. § 20507(c). 52 U.S.C. § 20509. *See United States v. Missouri*, 535 F.3d 844, 849–50 (8th Cir. 2008) (The NVRA "clearly envisions [the State] will actively oversee the general program. After all, the term 'conduct' is an active verb, encompassing the concept of providing leadership. . . . Under the NVRA's plain language, [the State] may not delegate the responsibility to conduct a general program to a local official and thereby avoid responsibility if such a program is not reasonably conducted.").

## FACTUAL BACKGROUND

7. The NVRA expressly exists "to establish procedures that will increase the number of eligible citizens who register to vote in elections for federal office," "to make it possible for Federal, State, and local governments to implement [the NVRA] in a manner that enhances the participation of eligible citizens as voters in elections for Federal office," "to protect the integrity of the electoral process," and "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b).

8. To give effect to these purposes, the NVRA requires each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of . . . the death of the registrant[] or a change in the residence of the resident." *Id.* § 20507(a)(4).

9. To ensure compliance with this measure, "[e]ach State," including the State of New Jersey, "shall maintain for at least 2 years and make available for public inspection and, where available, photocopying at a reasonable cost, *all records* concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official

3

lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered" ("Voter List Maintenance Records"). 52 U.S.C. § 20507(i)(1).

10. By letter dated March 25, 2025, the RNC submitted a public records request seeking sixteen categories of Voter List Maintenance Records in the possession, custody, or control of Defendant (the "March 25 Request") (attached hereto as **Exhibit A**).

11. The March 25 Request sought the Voter List Maintenance Records in electronic format and requested that Defendant produce them on a rolling basis—*i.e.*, the RNC requested that records be produced as they were collected and immediately following any necessary review. Ex. A at 6.

12. For over two months, Defendant refused to acknowledge the March 25 Request or to provide any responsive records.

13. Seventy days after the RNC submitted the March 25 Request, on June 3, 2025, the RNC sent a follow-up letter, enclosing the March 25 Request and requesting a status update (attached hereto as **Exhibit B**).

14. Eighty-five days after the March 25 Request was submitted—on June 18, 2025—Defendant finally acknowledged receipt of the March 25 Request. At that time, representatives from Defendant's office stated that they were "reviewing" it (attached hereto as **Exhibit C**).

15. While awaiting Defendant's response to the March 25 Request, the RNC submitted a second public records request on June 16, 2025, seeking two additional categories of Voter List Maintenance Records (the "June 16 Request") (attached hereto as **Exhibit D**). Specifically, the June 16 Request sought records discussing or otherwise concerning (1) New Jersey voters who

4

had requested to be removed from New Jersey's official voter list and (2) New Jersey voters who had *actually* been removed from New Jersey's official voter list upon request.

16. On June 18, 2025, Defendant's office acknowledged receipt of the June 16 Request and stated, as it did in response to the March 25 Request, that it was "reviewing" it (attached hereto as **Exhibit E**).

17. One hundred days after the March 25 Request was submitted and nearly three weeks after the June 16 Request was submitted—with nothing further from Defendant—the RNC notified Defendant on July 3, 2025, that New Jersey was in violation of the NVRA, in accordance with 52 U.S.C § 20510(b)(1) (the "Violation Letter") (attached hereto as **Exhibit F**).

18. In the Violation Letter, the RNC asserted that Defendant could cure the asserted NVRA violations by providing the requested Voter List Maintenance Records forthwith. Ex. F at 3.

19. On July 11, 2025, Defendant forwarded a partial response to two of the RNC's sixteen requests for records contained in the March 25 Request and stated that "[y]our requests dated March 25 and June 16, 2025, as well as your letter dated July 3, 2025, were received by this office. We are working on your request and will be providing additional responses as soon as we can" (attached hereto as **Exhibit G**).

20. On July 29, 2025, Defendant's office sent correspondence refusing to fulfill either of the RNC's requests (attached hereto as **Exhibit H**).

21. In its explanation, Defendant expressly refused to fulfill fifteen of the RNC's eighteen total requests for public records. *See* Ex. H. Defendant's refusal to do so, as discussed below, is inconsistent with the NVRA's public-disclosure mandate:

    a.  Request No. 1 of the March 25 Request sought each record documenting, describing, or discussing New Jersey's NVRA voter list maintenance program over the past two years. In denying Request No. 1, Defendant's office asserted that it "does not have responsive records." Forty-eight other states that have received and responded to an identical request from the RNC have been able to identify and produce responsive records. It is inconceivable that, over the past two years, neither Defendant nor her office has produced a *single* record—*e.g.*, a policy, procedures, internal memorandum, training material, memorandum of understanding, etc.—discussing New Jersey's NVRA list maintenance program. If Defendant indeed has no record discussing New Jersey's list maintenance programs and efforts, then Defendant clearly has abrogated the responsibilities assigned to her under the NVRA. Thus, Defendant has failed to respond to Request No. 1 of the March 25 Request as required under the NVRA.

    b.  Requests Nos. 3 through 5 of the March 25 Request respectively sought each record listing or identifying persons who were sent, responded to, or failed to respond to an address confirmation notice over the past two years. In denying Requests Nos. 3 through 5, Defendant's office acknowledged that it possesses responsive voter data in its Statewide Voter Registration System ("SVRS") but refused to provide such data because "the SVRS reporting module is not programmed to generate a report that displays a list of all voters that have been issued a confirmation notice along with the date the notice was printed and indication of whether the voter responded." Ex. H at 3–4. Even if the SVRS reporting module is not pre-programmed to produce a report containing the responsive data alone, such information is clearly in Defendant's possession and must be disclosed under the NVRA. Defendant cannot conceal the information in her possession by refusing to access it with a few keystrokes or software. Accordingly, Defendant's

refusal to provide such information, in any form whatsoever, constitutes a failure to produce records under the NVRA.

    c. Requests Nos. 8 through 10 of the March 25 Request respectively sought each record utilizing, documenting, or discussing information about (1) deceased voters, (2) voters who have relocated, and (3) voters convicted of a crime, for the purpose of updating voter registrations, exchanged between Defendant's office and various state and federal departments and systems. In denying Requests Nos. 8 through 10, Defendant's office acknowledged that such records may be in the possession of, respectively, the New Jersey Department of Health, *see* Ex. H. at 5, the New Jersey Motor Vehicle Commission, *id.* at 6, and the New Jersey Department of Corrections, *id.*, but refused to produce such records "given the overbreadth" of Requests Nos. 8 through 10. The NVRA's public-disclosure provision does not permit a state to refuse production on grounds of overbreadth. *See* 52 U.S.C. § 20507(i)(1). Given Defendant's acknowledgment that such records exist, Defendant's denial of Requests Nos. 8 through 10 of the March 25 Request without even performing a search for responsive records constitutes a failure to produce records under the NVRA.

    d. Requests Nos. 14 and 15 of the March 25 Request respectively sought each record exchanged between Defendant's office and (1) other state officials or agencies discussing or identifying deceased, relocated, criminally convicted, duplicate-registered, non-voting, or non-citizen voters for the purpose of updating New Jersey's official voter list and each record exchanged between Defendant's office, or (2) local voter registration officials transmitting or discussing instructions on voter list maintenance procedures, notices concerning any failure to comply with such procedures, and records demonstrating the implementation of the state's procedures by each locality. In denying Requests Nos. 14 and 15, Defendant asserted that the

RNC's requests are overbroad and place an undue burden on Defendant's office. Because the NVRA does not permit a state to deny a request on grounds of overbreadth or undue burden, Defendant's denial of Requests Nos. 14 and 15 constitutes a failure to produce records under the NVRA.

        e.      Request No. 16 of the March 25 Request sought each record that is or mentions a complaint, message, report, or other communication received by Defendant's office discussing voter roll inaccuracies and each record documenting Defendant's response to any such complaint or other communication. These records concern the implementation of New Jersey's voter list maintenance activities and must, therefore, be maintained and disclosed under the NVRA's public-disclosure provision. *See Voter Reference Found., LLC v. Torres*, 727 F. Supp. 3d 1014, 1213 (D.N.M. 2024) (The NVRA's public-disclosure provision "does not say: 'National Voter Registration Act programs and activities,' or 'programs and activities under this Act.' The provision's 'programs and activities,' therefore, must reference programs and activities more broadly; the only limitation is that those programs or activities are 'conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters.'"); *Pub. Int. Legal Found. v. Bellows*, 92 F.4th 36, 49 (1st Cir. 2024) ("[T]he evaluation of voter registration rolls would be impossible if the results of [the State's] voter list registration and maintenance activities were not subject to public disclosure."); 52 U.S.C. § 20507(i)(1). In denying Request No. 16, Defendant again asserted that the request was denied because it is "practically infeasible." Defendant provided no support for this vague assertion. Defendant's unilateral and unsubstantiated determination that collecting and producing Voter List Maintenance Records is "infeasible" does not excuse its failure to meet the requirements of the NVRA. Therefore, Defendant's denial of Request No. 16 violates the NVRA's public-disclosure provision.

   f. Request No. 1 of the June 16 Request sought each record documenting or listing the names of voters who requested to be removed from New Jersey's official voter list. Again, Defendant denied this request on grounds of "infeasibility." For the same reasons identified in the immediately preceding subparagraph, Defendant's refusal to fulfill this request constitutes a violation of the NVRA.

  22. To date, Defendant has failed to provide all public records sought by either the March 25 Request or the June 16 Request. Indeed, the only records produced by Defendant include: (1) the names, addresses, dates of birth, and dates of removal of New Jersey voters between March 2023 and July 2025 (without specifying the reason for removal); (2) similar data on voters who have been marked inactive over the same time period; and (3) similar data on voters removed upon the removed voter's request.

  23. As a result, the RNC has now been forced to bring the instant action to seek legal redress for Defendant's refusal to comply with lawful requests pursuant to federal law.

## CLAIMS FOR RELIEF

### COUNT ONE – VIOLATION OF THE NVRA, 52 U.S.C. § 20507(i)

  24. The RNC restates and incorporates herein the allegations in the foregoing paragraphs of the Complaint.

  25. Both the March 25 Request and the June 16 Request demanded public records that the State of New Jersey is required to maintain and disclose pursuant to 52 U.S.C. § 20507(i).

  26. Defendant has failed to provide Voter List Maintenance Records under the NVRA, as described above. This information is essential for the RNC to assess the accuracy of the voter registration data it purchases from New Jersey for the purpose of engaging in voter communications, get-out-the-vote activities, and other political action. The information is also

essential to the RNC's political efforts to assess whether the State of New Jersey is conducting "a general program that makes a reasonable effort to remove the names of ineligible voters" from its official voter registration lists, as required under the NVRA. *Id.* § 20507(a)(4). The information is also essential to the RNC's efforts to ensure election integrity and advocacy for election administration improvements.

27. The NVRA requires Defendant to provide "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered." 52 U.S.C. § 20507(i).

28. Defendant's failure to provide the Voter List Maintenance Records in response to both the March 25 Request and the June 16 Request is a violation of the NVRA.

29. Unless and until ordered to do so by this Court, Defendant's refusal to provide these records as requested constitutes a continuing violation of federal law.

## **PRAYER FOR RELIEF**

The RNC respectfully requests the following relief:

A. Declare that Defendant's refusal to provide "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," violates Section 8 of the NVRA. 52 U.S.C. § 20507(i)(1).

B. Declare that any state law that prohibits Defendant from providing the requested Voter List Maintenance Records is preempted by federal law.

    C.      Order Defendant to provide to the RNC all records reflecting, listing, or otherwise concerning individuals removed from New Jersey's voter registration list from March 25, 2023, through the date of this Court's order, for the reasons specified in the RNC's March 25, 2025, and June 16, 2025, requests.

    D.      Award the RNC reasonable attorneys' fees, including litigation expenses and costs, pursuant to 52 U.S.C. § 20510(c).

    E.      Order such further relief as the Court deems just and proper.

Dated: November 17, 2025

Respectfully submitted,

By: */s/ Josiah Contarino*
Josiah Contarino (NJ Bar No. 003962013)
**DHILLON LAW GROUP INC.**
50 Park Place, Suite 1105
Newark, NJ 07102
(917) 423-7221
jcontarino@dhillonlaw.com

*Attorneys for Plaintiff*
*Republican National Committee*

## CERTIFICATION

It is hereby certified pursuant to 28 U.S.C. § 1746 and pursuant to L.Civ.R. 11.2 that the matter in controversy is not presently the subject of any other action pending in any court or of an arbitration proceeding to date other than an action involving the subject documents under New Jersey's Open Public Records Act in New Jersey Superior Court, Mercer County, MER-L-1499-25.

*/s/ Josiah Contarino*